[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Batista,* Slip Opinion No. 2017-Ohio-8304.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8304

THE STATE OF OHIO, APPELLEE, *v.* BATISTA, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Batista,* Slip Opinion No. 2017-Ohio-8304.]

*Criminal law—R.C. 2903.11(B)(1)—Because R.C. 2903.11(B)(1) regulates conduct, not speech, it does not violate the First Amendment to the United States Constitution, and it is rationally related to the state's legitimate interest in preventing the transmission of the human immunodeficiency virus to sexual partners who may not be aware of the risk and therefore does not violate the Equal Protection Clauses of either the United States or Ohio Constitutions.*

(No. 2016-0903—Submitted May 17, 2017—Decided October 26, 2017.)

APPEAL from the Court of Appeals for Hamilton County,
No. C-1500341, 2016-Ohio-2848.

_____

SYLLABUS OF THE COURT

Because R.C. 2903.11(B)(1) regulates conduct, not speech, it does not violate the
First Amendment to the United States Constitution, and it is rationally

related to the state's legitimate interest in preventing the transmission of the human immunodeficiency virus to sexual partners who may not be aware of the risk and therefore does not violate the Equal Protection Clauses of either the United States or Ohio Constitutions.

_____

**O'DONNELL, J.**

{¶ 1} Orlando Batista appeals from a judgment of the First District Court of Appeals that affirmed his felonious assault conviction for knowingly engaging in sexual conduct with his girlfriend, R.S., without disclosing to her that he had tested positive as a carrier of the human immunodeficiency virus ("HIV").

{¶ 2} Batista maintains that R.C. 2903.11(B)(1), which prohibits those persons with knowledge of their HIV status from "engag[ing] in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct," is a content based regulation that compels speech in violation of the First Amendment to the United States Constitution. He also contends that this statute violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution because there is no rational basis for a distinction between HIV positive individuals and individuals with other infectious diseases such as Hepatitis C or between the methods of transmitting HIV.

{¶ 3} Because R.C. 2903.11(B)(1) regulates conduct, not speech, it does not violate the First Amendment to the United States Constitution, and it is rationally related to the state's legitimate interest in preventing the transmission of HIV to sexual partners who may not be aware of the risk and therefore does not violate the Equal Protection Clauses of either the United States or Ohio Constitutions. Accordingly, we affirm the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 4} In October 2001, while Orlando Batista was incarcerated on an unrelated charge, the Department of Rehabilitation and Correction tested him for HIV and informed him that he tested positive for the disease.

{¶ 5} After his release on that charge, in November 2013, Batista began an intimate relationship with R.S. and knowingly engaged in intercourse with her without disclosing his HIV positive status to her prior to engaging in that conduct.

{¶ 6} Two months later, she learned of his HIV positive status from his ex-sister-in-law. When she confronted him, he acknowledged he had tested positive, and he told her he had been infected when he was a teenager. During a subsequent interview with the police, he admitted to having had intercourse with her without telling her he was HIV positive.

{¶ 7} A grand jury indicted him for felonious assault in violation of R.C. 2903.11(B)(1), which makes it a crime for a person who has tested positive for HIV to knowingly engage in sexual conduct with another without disclosing that information prior to engaging in the sexual conduct. Batista moved to dismiss the indictment, arguing that the statute violates the First Amendment right to free speech and the Equal Protection Clauses of the United States and Ohio Constitutions.

{¶ 8} The trial court conducted a hearing on the motion, and Batista presented the testimony of Dr. Judith Feinberg, a faculty member at the University of Cincinnati College of Medicine with a specialty in infectious diseases and a subspecialty in HIV disease. Feinberg testified that the lifetime survival rate of those diagnosed with HIV who receive treatment is now comparable to the survival rate of people who do not have HIV. She also acknowledged, however, that while there are ways to treat HIV, there is no cure. She compared HIV to Hepatitis C, noting that there are medicines that can cure Hepatitis C, and acknowledged that although there is increasing recognition that Hepatitis C can spread through sexual

transmission, the most common way to spread it is through needles because the amount of Hepatitis C in blood is high compared to amounts in other bodily fluids. At the conclusion of the hearing, the court denied Batista's motion.

**{¶ 9}** Batista subsequently pleaded no contest to felonious assault, and the trial court found him guilty and sentenced him to eight years in prison.

**{¶ 10}** The First District Court of Appeals affirmed that conviction and concluded that the statute does not violate the First Amendment. The court reasoned that the statute is a content based law subject to strict scrutiny, that the state has a compelling interest in stopping the transmission of HIV through sexual conduct, and that the statute is narrowly tailored to serve that interest because it requires disclosure only to potential sexual partners. 2016-Ohio-2848, 64 N.E.3d 498, ¶ 9-12. It also held that R.C. 2903.11(B)(1) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions because the state has a legitimate interest in stopping the spread of HIV and because there is a rational relationship between the state's interest and requiring disclosure of a positive HIV status before engaging in sexual conduct. *Id*. at ¶ 6.

**{¶ 11}** We accepted Batista's discretionary appeal.

**{¶ 12}** On appeal to this court, he argues that R.C. 2903.11(B) is subject to strict scrutiny review for the First Amendment and Equal Protection claims because the statute compels content based speech and implicates a fundamental right. He acknowledges that the state has a compelling interest in reducing or stopping the spread of HIV and other infectious diseases, but he argues that the statute fails under strict scrutiny review because it is not narrowly tailored to further a compelling government interest: it does not prevent the spread of HIV, it compels speech even when the sexual conduct or bodily fluids cannot transmit HIV, and its existence is not necessary to prosecute HIV positive individuals for exposing people to HIV.

**{¶ 13}** Batista further maintains that even if the statute does not compel content based speech, it violates equal protection because there is no rational basis

for a distinction between HIV positive individuals and those individuals with other infectious diseases such as Hepatitis C. He contends that both HIV and Hepatitis C can be transmitted sexually and by sharing needles, that there is no vaccine for either disease, and that both diseases can shorten the lifespan of the infected person. Batista maintains that by singling out HIV but no other infectious disease, the statute is motivated by an outdated stigma that surrounds the virus. He also argues that the statute discourages people from getting tested for HIV and that it does not prevent the spread of HIV. Lastly, he asserts that there is no rational basis for a distinction between the methods of transmission of HIV.

{¶ 14} The state argues that the statute prohibits only uninformed sexual conduct and any effect this prohibition has on speech is incidental. Alternatively, it argues that even if R.C. 2903.11(B)(1) compels speech, the statute withstands strict scrutiny review on the First Amendment and Equal Protection claims. The state claims that it has a compelling interest in ensuring informed consent and in limiting the spread of HIV by means of sexual conduct and that the statute is narrowly tailored to that interest because it neither prohibits an infected person from having sexual relations with another nor compels public disclosure of a person's HIV positive status.

## Issues

{¶ 15} We are called upon to consider whether this statute violates the First Amendment right of free speech or the Equal Protection Clauses of the United States and Ohio Constitutions.

## Law and Analysis

{¶ 16} R.C. 2903.11(B)(1) states: "No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly * * * [e]ngage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct."

*First Amendment*

**{¶ 17}** The First Amendment does not prevent statutes regulating conduct from imposing incidental burdens on speech. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 62, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006), quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834 (1949) (" 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed' "); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) ("the First Amendment does not prevent restrictions directed at * * * conduct from imposing incidental burdens on speech").

**{¶ 18}** This case presents an issue of first impression in this state. However, two state supreme courts have held that statutes similar to R.C. 2903.11(B)(1) did not regulate speech and therefore did not violate the First Amendment.

**{¶ 19}** In *State v. S.F.*, 483 S.W.3d 385 (Mo.2016), where a Missouri statute made it "unlawful for any individual knowingly infected with HIV to * * * [a]ct in a reckless manner by exposing another person to HIV without the knowledge and consent of that person to be exposed * * * [t]hrough contact with blood, semen or vaginal secretions in the course of oral, anal or vaginal sexual intercourse," Mo.Rev.Stat. 191.677.1(2)(a), the Missouri Supreme Court concluded that the statute "regulates conduct, not speech," and because it "imposes only incidental burdens on speech, it does not violate the freedom of speech protections of the federal or state constitutions," *S.F.* at 387-388. The court further stated that "the statute seeks to prevent certain conduct that could spread HIV to unknowing or nonconsenting individuals. While individuals may have to disclose their HIV status if they choose to engage in activities covered by the statute, any speech compelled by [the statute] is incidental to its regulation of the targeted conduct and does not constitute a freedom of speech violation." (Footnote omitted.) *Id.*

6

**{¶ 20}** And in *People v. Russell*, 158 Ill.2d 23, 630 N.E.2d 794 (1994), where Caretha Russell, who knew she was infected with HIV, engaged in sexual intercourse with Daren Smith without telling Smith of her infection and the state subsequently charged her with violating a statute that made it a crime for a knowing carrier of the HIV virus to transmit the virus to another person through intimate conduct, the Supreme Court of Illinois held that the statute did not have "the slightest connection with free speech." *Id*. at 26. *See* former 720 Ill.Comp.Stat. 12-16.2(A), 1989 Ill.Legis.Serv. P.A. 86-897 ("A person commits criminal transmission of HIV when he or she, knowing that he or she is infected with HIV: (1) engages in intimate contact with another. * * * (D) It shall be an affirmative defense that the person exposed knew that the infected person was infected with HIV, knew that the action could result in infection with HIV, and consented to the action with that knowledge").

**{¶ 21}** Like the statutes at issue in *S.F.* and *Russell*, R.C. 2903.11(B)(1) prohibits HIV positive individuals from engaging in sexual conduct without disclosing the HIV status prior to engaging in the conduct. Although R.C. 2903.11(B)(1) requires those who know they are HIV positive to disclose their status if they choose to engage in sexual conduct with another person, the disclosure is incidental to the statute's regulation of the targeted conduct. Thus, this statute regulates conduct, not speech, and therefore does not violate the First Amendment right to free speech.

*Equal Protection*

**{¶ 22}** In *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 39, this court held that "a statute that does not implicate a fundamental right or a suspect classification does not violate equal-protection principles if it is rationally related to a legitimate government interest." Under rational basis analysis, a classification " 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a

rational basis for the classification.' " *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999), quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications* at 315.

**{¶ 23}** The federal Equal Protection Clause does not forbid classification, but it requires that different treatment be related to the purpose of the law. *See State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 24 (plurality opinion). Here, the classification is individuals with knowledge of their HIV-positive status who fail to disclose that status to someone prior to engaging in sexual conduct with that person. The valid state interest is curbing HIV transmission to sexual partners who may not be aware of the risk. The statute's treatment of individuals with knowledge of their HIV-positive status who fail to disclose that status to a sexual partner furthers the state interest here.

**{¶ 24}** Batista asks the court to weigh the wisdom of the legislature's policy choices, but that is beyond our authority. Because there is some conceivable basis to support the legislative arrangement, the statute does not violate equal protection. Batista's argument that no rational basis exists to require only HIV-positive individuals to disclose their status while not requiring the same of individuals with Hepatitis C, for example, is misplaced. We are not faced with a statute that requires individuals to disclose their Hepatitis C diagnosis or other contagious infection. We leave that policy decision to the General Assembly. And the existence of other sexually transmitted diseases that may have serious public health and safety consequences does not eliminate the rational relationship between the classification here—individuals with knowledge of their HIV-positive status who fail to disclose that status to sexual partners—and the goal of curbing HIV transmission.

**{¶ 25}** There is also a rational basis for the statute's focus on a specific type of HIV transmission; specifically, sexual conduct rather than transmission by other methods, such as blood or needles. Sexual conduct remains one of the methods by which HIV is transmitted. Simply because there are other methods of HIV transmission does not render the classification here without a rational basis.

**{¶ 26}** We recognize that there have been advancements in the treatment of individuals with HIV that may have reduced the transmission and mortality rates associated with the disease. However, we cannot say that there is no plausible policy reason for the classification or that the relationship between the classification and the policy goal renders it arbitrary or irrational. *See Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 19-20.

**{¶ 27}** Thus, Batista's position that R.C. 2903.11(B)(1) is not rationally related to the state's legitimate interest in preventing the transmission of HIV to sexual partners who may not be aware of the risk is not well taken, and the statute does not violate the right to equal protection under either the United States or Ohio Constitutions.

**Conclusion**

**{¶ 28}** R.C. 2903.11(B) does not violate the First Amendment right to freedom of speech because it regulates conduct and any speech compelled by the statute is incidental to the regulated conduct. The statute also does not violate the Equal Protection Clauses of the United States or Ohio Constitutions because it is rationally related to the state's legitimate interest in preventing the transmission of HIV to sexual partners who may not be aware of the risk. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'NEILL and WRIGHT, JJ., concur.

DEWINE, J., concurs, with an opinion joined by KENNEDY and FRENCH, JJ.

THOMAS R. WRIGHT, J., of the Eleventh Appellate District, sitting for FISCHER, J.

—————————————

**DEWINE, J., concurring.**

{¶ 29} I agree with the majority that R.C. 2903.11(B)(1) does not violate the First Amendment to the United States Constitution or the Equal Protection Clauses of the United States or Ohio Constitutions. I write separately because I get there by a different path.

{¶ 30} In the majority's view, the First Amendment is not implicated because the "statute regulates conduct, not speech." Majority opinion at syllabus. I disagree. The statute plainly regulates both conduct and speech: one who tests positive for the human immunodeficiency virus ("HIV") must tell his partner that he is HIV positive before engaging in sex. When the government tells someone what he must say, it is regulating speech. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006); *Riley v. Natl. Fedn. of the Blind of North Carolina, Inc.*, 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

{¶ 31} Having determined that the statute implicates the First Amendment, the next question is the proper test to determine the statute's constitutionality. Citing *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 67 (1968), the state suggests that we should apply intermediate scrutiny because the statute combines speech and nonspeech elements.[1] The United States Supreme Court, however, has limited the application of *O'Brien* to content-neutral restrictions on speech. *See Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *Ward v. Rock Against Racism*, 491 U.S. 781, 798-799, 109 S.Ct. 2746,

---

[1] To be clear, the Hamilton County Prosecutor's Office, which represents the appellee, the state of Ohio, argues for intermediate scrutiny. Amicus curiae, the Ohio Attorney General, argues that the statute does not involve speech, but if the court concludes otherwise, the statute passes muster under strict-scrutiny analysis.

105 L.Ed.2d 661 (1989). And the Supreme Court has determined that all compelled speech is content based, a conclusion that would suggest that *O'Brien* is inapplicable here. *Riley* at 795. Nevertheless, I find it unnecessary to consider whether intermediate scrutiny might be appropriate because I am convinced that R.C. 2903.11(B)(1) passes muster even under the more rigorous strict-scrutiny test.

{¶ 32} Under strict scrutiny, a content-based regulation of speech will be upheld only if it is narrowly tailored to achieve a compelling governmental interest and it is the least restrictive means of doing so. *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.*, 89 Ohio St.3d 564, 567, 733 N.E.2d 1152 (2000), citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Here, the government has two interests at stake. First, the government has an interest in limiting the spread of the HIV virus. Public health is an important governmental concern. *See, e.g.*, *Mussivand v. David*, 45 Ohio St.3d 314, 318-319, 544 N.E.2d 265 (1989). Second, the government has an interest in ensuring informed consent to sexual relations. Our society has long criminalized nonconsensual sexual relations. *See* R.C. 2907.02(A)(1)(b) and (c); R.C. 2907.03(A)(2) and (3); R.C. 2907.04(A); R.C. 2907.05(A)(2), (3), (4), and (5). The government's insistence that an HIV-positive individual inform his partner of his HIV status is perfectly consistent with this long-protected interest.

{¶ 33} In challenging the statute, the appellant, Orlando Batista, points out that remarkable strides have been made in the treatment of acquired immune deficiency syndrome ("AIDS"). He notes that HIV-positive individuals "can expect to live into their 70s" and "[w]hile there is no cure or vaccine for HIV/AIDS, it is not invariably fatal." In other words, Batista argues that the health risks from infection with the HIV virus are not really all that bad. But the question is who gets to evaluate that risk: should the HIV-positive individual get to assess that risk for his sexual partner or should the partner get to make her own decision. Fair to say

that most—if not all—people would insist on the right to make that decision for themselves.

{¶ 34} The facts of this case illustrate vividly what is at stake. In enacting the regulation in question, the government was protecting the victim's right to make her own choice about whether to engage in risky sexual relations. Though Batista invokes his right not to be forced to speak, the victim's rights in this case are at least equally worthy of protection. I would conclude that the interrelated interests of the government that are manifest in the statute—protecting public health and ensuring informed consent—rise to the level of a compelling governmental interest.

{¶ 35} Moreover, I would conclude that the means chosen by the state to further these interests is narrowly tailored and constitutes the least restrictive means of doing so. Under the statute, a person must disclose his HIV status only if he wishes to have sex and then only to the person with whom he wishes to have sex. The only speech that is compelled is speech that is directly necessary for informed consent. I cannot fathom—and Batista has not advanced—any less restrictive or more narrowly tailored means that could have been employed by the government to achieve its interests here. Thus, I find no violation of the rights guaranteed to Batista under the First Amendment.

{¶ 36} Nor do I find merit to Batista's equal-protection claim. Relying upon its conclusion that the statute regulates conduct, not speech, the majority applies rational-basis review to the classification. My conclusion that the classification affects a fundamental right causes me to apply a higher level of scrutiny. *See State v. Williams*, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000). I end up in the same place as the majority, however: because the statute is narrowly tailored to serve a compelling governmental interest, there is no violation of Batista's equal-protection rights under the Ohio or United States Constitutions.

**{¶ 37}** For these reasons, I concur in the majority's judgment that there has been no violation of the rights guaranteed to Batista under the First Amendment or the Equal Protection Clauses of the Ohio or United States Constitution.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

————————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Demetra Stamatakos and Joshua A. Thompson, Assistant Public Defenders, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging affirmance on behalf of amicus curiae Ohio Attorney General Michael DeWine.

Elizabeth Bonham and Joseph Mead; and Jeffrey Gamso, urging reversal for amici curiae American Civil Liberties Union of Ohio Foundation, Inc., and Center for Constitutional Rights.

Valerie Kunze, Assistant State Public Defender; Gibbons P.C., Lawrence Lustberg, and Avram Frey; and Catherine Hanssens and Mayo Schreiber Jr., urging reversal for amici curiae Center for HIV Law and Policy, American Academy of HIV Medicine, GLBTQ Legal Advocates & Defenders, GLMA: Health Professionals Advancing LGBT Equality, Human Rights Campaign, National Association of Criminal Defense Lawyers, National Center for Lesbian Rights, Office of the Ohio Public Defender, and Treatment Action Group.

————————————